601 P.2d 338

**STATE of Arizona, Appellee,**

v.

**Lee Robert HINTON, Appellant.**

**No. 1 CA–CR 3678.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 28, 1979.

Rehearing Denied Oct. 10, 1979.

Review Denied Oct. 23, 1979.

**576**

Robert K. Corbin, Arizona Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division, Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Thinnes & Rawles, by Thomas A. Thinnes, Thomas V. Rawles, Phoenix, for appellant.

## OPINION

SCHROEDER, Presiding Judge.

This case arises out of the death of Mae Matilda Hinton as the result of a gunshot wound in the head. The appellant, Lee Robert Hinton, who was the victim's son, appeals from his conviction of involuntary manslaughter under former A.R.S. §§ 13–455, 13–456(A)(2) and the ten years probation imposed following submission of the case to the trial court on a stipulated record. The issue in the case concerns whether the prosecutor properly raised the charge against appellant from involuntary manslaughter to second degree murder following the appellant's motion to suppress certain statements made to police officers. Because we agree with the appellant that the prosecutor's action was in violation of established principles designed to prevent prosecutorial vindictiveness following a de-fendant's exercise of constitutional rights, we reverse.

In the early morning hours of April 11, 1977, officers of the Phoenix Police Department were summoned to the home of the appellant and his mother, Mae Matilda Hinton. The appellant met the police at the door and admitted to Officer Cresswell that he had just shot his mother. Appellant then led the officer to the living room where the victim was seated in a chair with a gunshot wound in the head. As emergency services personnel administered aid to the victim, the appellant made further statements to Cresswell to the effect that he had shot his mother accidentally. The victim was later pronounced dead on arrival at the hospital.

Appellant was then questioned at length, first in a police vehicle at the scene, and later at the police station by Officer Richardson. He made several statements explaining that his mother had been accidentally shot while he was cleaning the gun in preparation for target shooting the next day. When asked what direction the gun had been pointing when it went off, appellant nonsensically replied "I said, 'ha, ha,' and the whole world came to an end."

The State's prosecution of the case was marked by false starts. Appellant was originally charged with involuntary manslaughter by a complaint in April of 1977. That complaint was shortly dismissed, and in July of 1977 a second complaint was filed, charging appellant with murder, open. That complaint was also dismissed by the State at the preliminary hearing. In August of 1977 appellant was indicted for involuntary manslaughter, and the appellant then moved to suppress some of the statements made to the law enforcement officers. He presented evidence that he had ingested Valium shortly before the officers arrived. The court found that the drug began to affect him when Officer Richardson commenced his questioning. The court therefore ruled that the statements to Officer Richardson were inadmissible, but that the statements to Officer Cresswell were admissible.

Following this ruling, the State moved to dismiss the involuntary manslaughter charge without prejudice, and that motion was granted in December of 1977. Still a fourth charge, which provides the basis for the instant appeal, was filed in 1977 in the nature of an indictment for second degree murder. The appellant moved to dismiss that indictment on the ground that the prosecution, under principles designed to prevent prosecutorial vindictiveness, could not increase the seriousness of the charge following the appellant's assertion of constitutional rights. The trial court held a hearing and then denied the motion to dismiss, finding that the State's actions may well have been inept, but "were not initiated by vindictiveness against the defendant for vindicating his rights . . .".

Appellant was at that point faced with a choice of going before a jury on the charge of second degree murder or accepting the offer of the State to submit the case to the trial court upon a stipulated record and an understanding that conviction would be of an offense no higher than involuntary manslaughter. Appellant chose the latter option, and this appeal followed.

The leading case involving the prosecutorial increase in severity of charges following assertion of rights by defendant is *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), holding that, upon retrial after a successful appeal, a more severe sentence may be imposed only upon an affirmative showing of justifying circumstances. Such a showing was required in order to avoid retaliatory or vindictive sentencing because of the successful appeal. In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court extended that holding to a different situation. The accused was initially charged with a misdemeanor and convicted in an inferior North Carolina court. Upon exercising his right under a North Carolina law to file a notice of appeal for a trial de novo in the superior court, he was charged with an indictment charging a felony offense in connection with the same acts. The Supreme Court held the second charge invalid, stating that when the circumstanc-

es "pose a realistic likelihood of 'vindictiveness' . . . due process of law requires a rule analogous to that of the *Pearce* case." 417 U.S. at 27, 94 S.Ct. at 2102, 40 L.Ed.2d at 634. The ruling in *Blackledge* has been followed and explained in subsequent federal cases as a prophylactic measure designed to protect the defendant who exercises rights from having to bear the burden of the prosecution's "upping the ante," in the form of a higher charge. It is also intended to prevent chilling the exercise of rights by other defendants. *United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir.), cert. denied, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977). *See also United States v. Groves*, 571 F.2d 450 (9th Cir. 1978); *United States v. Alvarado-Sandoval*, 557 F.2d 645 (9th Cir. 1977); *United States v. Ruesga-Martinez*, 534 F.2d 1367 (9th Cir. 1976); *United States v. Jamison*, 164 U.S. App.D.C. 300, 505 F.2d 407 (D.C. Cir. 1974).

Under these cases, the actual existence of vindictiveness need not be proved. It is only the appearance or likelihood of vindictiveness that prevents prosecution of a higher charge. As stated in *United States v. Jamison, supra*, a higher charge may be brought, but its appropriateness depends upon a showing of intervening circumstances or events or of new evidence which the government was excusably unaware at the time of the first charge. Mere ineptitude in filing the lower charge in the first place does not justify a subsequent charge of a more serious crime. *United States v. Ruesga-Martinez, supra*. The standard to be applied in determining whether higher charges may be brought following an assertion by a defendant of his rights is thus an objective one: whether a change in circumstances justifies filing the higher charge. The standard is not a subjective one based upon the actual motivations of the prosecution.

In view of these principles, it is clear that the trial court in this case applied the wrong standard in endeavoring to determine the actual motivation of the prosecution and erred in holding the higher charge

**578**

was justified on the grounds that the prosecution was not in fact motivated by vindictiveness, but was simply inept.

■ We still must determine, on review, however, whether there were sufficient circumstances to justify the higher charge.

The State attempts to argue that such changed circumstances were created when the trial court suppressed the defendant's statements to Officer Richardson. The State's theory is apparently that when those statements relating to the appellant's accidental shooting of his mother were suppressed, the State's case for murder was strengthened. We do not comprehend how this could amount to a change of circumstances justifying the bringing of a higher charge. The suppression prevented the prosecution from exercising its option to use the statements. It did not, however, in any way affect the right of the defendant to bring up such matters or limit his own right to testimony on his own behalf.

The State also suggests that testimony of another witness became available after the suppression hearing, but the record reflects that that witness was available at all relevant times. Accordingly, there was no change in circumstances justifying the filing of the second degree murder charge.

This case does, however, differ from other cases following *Blackledge v. Perry, supra*, in that the defendant here was not convicted of the higher charge but was convicted of the lesser charge of involuntary manslaughter. Upon reversal, appellant is still subject to prosecution on that charge. The question then arises as to whether there has been any prejudice. The answer lies in the fact that, as a result of the erroneous filing of the second degree murder charge, the defendant was required to defend against that charge rather than the lesser charge of involuntary manslaughter. At the time of the State's offer he was given the choice of going to trial before a jury on the second degree murder charge, or accepting the State's offer to waive a jury and face the likelihood of a conviction for involuntary manslaughter. But for the second degree conviction possibility, he may

well have taken his chances with a jury on the involuntary manslaughter charge. It therefore cannot be said that the filing of the higher charge had no effect upon the defendant's ability to defend the case. Our conclusion in this regard is analogous to that reached by the D. C. Circuit in *United States v. Jamison, supra*, when it declined to reduce a conviction from the greater to the lesser charge and ordered a retrial confined to the lesser charge. The Court there reasoned that the existence of the higher charge made defense of the lesser charge more difficult.

Appellant's conviction must be reversed. The remaining question is whether the indictment on second degree murder should be dismissed, requiring the filing of a new charge, or whether the trial court may, upon reversal, proceed on the basis of the previously filed indictment. In considering this question, it is our opinion that the trial court's decision based upon the submission should be regarded as an acquittal of the higher charges, and that, upon reversal, the trial court may simply order a new trial on the lesser included charge of involuntary manslaughter.

The case is reversed with instructions to the trial court to conduct a new trial on the charge of involuntary manslaughter.

OGG, C. J., and JACOBSON, J., concur.