# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

FILED

December 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed: December 22, 1997

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellant, | ) | Hon. C. Creed McGinley, |
| | ) | Judge |
| Vs. | ) | |
| | ) | HENRY COUNTY |
| DAVID WILLARD PHIPPS, JR., | ) | |
| | ) | Supreme Court |
| Appellee. | ) | No. 02-S01-9607-CC-00068 |
| | ) | |

FOR STATE OF TENNESSEE
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kathy Morante,
Deputy Attorney General
Criminal Justice Division

Lisa A. Naylor,
Assistant Attorney General
Nashville, Tennessee

Robert "Gus" Radford
District Attorney General
Huntingdon, Tennessee

FOR DAVID WILLARD PHIPPS, JR.
Lionel R. Barrett, Jr.
Nashville, Tennessee

Jacob M. Dickinson, IV
Memphis, Tennessee

# O P I N I O N

REVERSED AND REMANDED.                    DROWOTA, J.

In this appeal, we must determine whether the State's decision to pursue the death penalty, following the defendant's successful appeal of his conviction for which the death penalty originally was not sought, gives rise to a rebuttable presumption of prosecutorial vindictiveness. After carefully considering the relevant legal principles, we conclude that the rebuttable presumption of vindictiveness applies in this case. Because the State had no opportunity, during the hearing on the motion to strike, to introduce proof to overcome the presumption, we reverse the decision of the Court of Criminal Appeals upholding the trial court's order striking the State's notice of intent to seek the death penalty and remand this cause to the trial court for a hearing in which the State shall bear the burden of demonstrating by clear and convincing evidence that the presumption of vindictiveness has been overcome. If, after hearing the proof presented, the trial court is satisfied that the presumption has been overcome, the State may seek the death penalty in this case.

## BACKGROUND

The facts relevant to the legal question presented by this appeal may be briefly stated. The defendant, David Willard Phipps, Jr., was tried for the first degree murder of Michael Presson. The State did not seek the death penalty, and upon a jury verdict of guilty, the trial court sentenced Phipps to life imprisonment. The defendant appealed, and after finding prejudicial error in the jury instructions, the Court of Criminal Appeals reversed the defendant's conviction and remanded for a new trial. See State v. Phipps, 883 S.W.2d 138 (Tenn. Crim. App. 1994), no app. for perm. to appeal filed.

When the case returned to the trial court, the State filed a notice of intent to seek the death penalty pursuant to Rule 12.3(b), Tenn. R. Crim. Proc. Phipps moved to strike the notice, arguing that principles of due process and double jeopardy preclude the State from seeking the death penalty following a successful defense appeal if the State did not seek the death penalty at the initial trial. At the hearing on the motion to strike, the State indicated that it intended to rely upon new evidence to establish the aggravating circumstance codified at Tenn. Code Ann. § 39-13-204(I)(5) (1989), "[t]he murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." The State identified a witness who had contacted the District Attorney General's office approximately one week prior to the trial and related a conversation between himself, the defendant, and some other men in which the defendant described how simple it would be to escape prosecution for a homicide if the victim's body were burned and buried in a remote area of Stewart County. The State did not present the testimony of this witness as an offer of proof at the hearing on the motion to strike.

The State also referred to a letter, allegedly written by the defendant, which had been found inside an internal, closed compartment of a back pack that was located by police after the murder near the victim's house. The back pack had been in the State's possession from the beginning of the murder investigation, but the letter had not been discovered until after the conclusion of Phipps' initial trial. A copy of this letter was attached to the State's memorandum of law filed in the trial court in opposition to the motion to strike.

Upon considering the argument of counsel at the hearing, the trial court granted the defense motion to strike the notice, thereby effectively barring the State from seeking the death penalty. However, the trial court also granted the State permission to seek an interlocutory appeal pursuant to Rule 9, Tenn. R. App. P., and the Court of Criminal Appeals accepted the appeal. Although first concluding that constitutional principles of double jeopardy do not bar the State from seeking the death penalty under such circumstances, the Court of Criminal Appeals affirmed the trial court's judgment, finding that the risk of prosecutorial vindictiveness and piecemeal litigation is too great to allow the State to seek the death penalty upon retrial following a successful defense appeal of a conviction for which the death penalty originally had not been sought. Thereafter, we granted the State permission to appeal to consider this important issue of law. For the reasons that follow, we reverse the decision of the Court of Criminal Appeals upholding the trial court's order striking the State's notice of intent to seek the death penalty, and remand this cause to the trial court for a hearing in which the State shall have the opportunity to present proof to overcome the presumption of prosecutorial vindictiveness.

## PROSECUTORIAL VINDICTIVENESS

We begin our analysis of the issue in this appeal with North Carolina v. Pearce, 395 U.S. 711, 724-25, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), in which the United States Supreme Court held that it is a violation of basic due process to punish a person because he has done what the law plainly allows. In Pearce, the defendant successfully appealed his conviction, and on retrial, received a greater sentence than had been originally imposed. Pearce brought a

federal habeas corpus action challenging the constitutionality of the harsher

sentence.

The Supreme Court initially concluded that neither the Double Jeopardy

Clause nor the Equal Protection Clause bar imposition of a more severe sentence

after retrial. However, the Court held that the Due Process Clause of the

Fourteenth Amendment prevents increased sentences which are actually or likely

motivated by a vindictive desire to punish a defendant for the exercise of a

statutory or procedural right. Id., 395 U.S. at 723-24, 89 S.Ct. at 2080. The

Pearce Court stated:

> [d]ue process of law, then, requires that vindictiveness against a
> defendant for having successfully attacked his first conviction must
> play no part in the sentence he receives after a new trial. And since
> the fear of such vindictiveness may unconstitutionally deter a
> defendant's exercise of the right to appeal or collaterally attack his
> first conviction, due process also requires that a defendant be freed
> of apprehension of such a retaliatory motivation on the part of the
> sentencing judge.

Id., 395 U.S. at 725, 89 S.Ct. at 2080. To prevent vindictiveness from entering

into the decision and to allay any fear on the part of a defendant that an increased

sentence is the product of vindictiveness, the Court fashioned a prophylactic rule

that

> whenever a judge imposes a more severe sentence upon a
> defendant after a new trial, the reasons for his doing so must
> affirmatively appear. Those reasons must be based upon objective
> information concerning identifiable conduct on the part of the
> defendant occurring after the time of the original sentencing
> proceeding. And the factual data upon which the increased
> sentence is based must be made part of the record, so that the
> constitutional legitimacy of the increased sentence may be fully
> reviewed on appeal.

Id., 395 U.S. at 726, 89 S.Ct. at 2081.  The rule announced in Pearce has been interpreted to create a rebuttable presumption of vindictiveness which may be overcome only by objective information in the record which justifies the increased sentence.  United States v. Goodwin, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982).

In Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court extended the rule of Pearce to encompass post trial prosecutorial conduct potentially motivated by vindictiveness.  In that case, Perry, while in state prison, was involved in a fight with a fellow inmate, and was charged with the misdemeanor offense of assault with a deadly weapon.  He was convicted in a state court of limited jurisdiction and sentenced to a six month prison term to run concurrent with the term he was then serving.  Perry exercised his statutory right to appeal to the County Superior Court, where, under applicable state law, he had a right to a trial *de novo*.

After Perry filed his notice of appeal, but before the trial *de novo*, the prosecutor obtained an indictment charging Perry with the felony offense of assault with a deadly weapon with intent to kill and inflict serious bodily injury. This charge was based on the same conduct for which Perry had been charged and convicted of the misdemeanor in the lower court.  Perry entered a guilty plea[1] to the felony offense and was sentenced to a term of five to seven years

---

[1]Perry entered a guilty plea upon the expectation that any sentence he received would run concurrent to the sentence he was then serving. Because, under state law the sentence on the guilty plea did not commence until the guilty plea was entered, the overall sentence was increased.

imprisonment to run concurrent with the sentence he was then serving. Overall, this conviction increased Perry's sentence by seventeen months.

The Supreme Court held that the prosecutor's decision to seek a felony indictment following Perry's assertion of his right to a *de novo* trial raised a presumption of vindictiveness.

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals–by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy--the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.

Id., 417 U.S. at 27-28, 94 S.Ct. at 2102. In so holding, the Blackledge Court acknowledged that no affirmative evidence was offered to establish that the prosecutor "acted in bad faith or maliciously in seeking the felony indictment against Perry." Id.*,* 417 U.S. at 28, 94 S.Ct. At 2102. The Court emphasized, however, that the Pearce decision was not grounded upon the existence of actual retaliatory motivation, but upon the proposition that due process protects against the fear of vindictiveness which may chill a defendant's exercise of the right to appeal or collaterally attack his first conviction. Id. The Court concluded that "[a] person convicted of an offense is entitled to pursue his statutory right to a trial *de novo* without apprehension that the state will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." Id.

The Blackledge Court found that the prosecutor's decision to obtain the indictment for a felony offense after Perry exercised his statutory right to appeal posed a "realistic likelihood of vindictiveness" justifying recognition of a rebuttable presumption. Id., 417 U.S. at 27, 94 S.Ct. at 2102. Because the record contained no explanation for the new indictment, the Court granted habeas corpus relief. In a revealing footnote, the Court expressly commented that a different disposition would have obtained had the State "shown that it was impossible to proceed on the more serious charge at the outset." Id., 417 U.S. at 29, n. 7, 94 S.Ct. at 2103, n. 7. The Court gave as an example a case in which an assault victim died after his attacker was convicted of assault, and the prosecutor was permitted to retry the defendant for homicide. Id., citing Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); see also Wasman v. United States, 468 U.S. 559, 566, 104 S.Ct. 3217, 3222, 82 L.Ed.2d 424 (1984) ("[W]e explicitly observed [in Blackledge] that a different disposition would have been called for had the State advanced a legitimate nonvindictive justification for the greater charge.") This statement by the Blackledge Court was no more than an acknowledgment and reaffirmation that Pearce established a rebuttable presumption of vindictiveness, not an absolute prohibition on enhancement of sentence upon retrial. Wasman, 468 U.S. at 566, 104 S.Ct. at 3222.

Because of its "severity," see Goodwin, 457 U.S. at 373, 102 S.Ct. at 2489, the Court has restricted application of the presumption of vindictiveness to situations where "its objectives are thought most efficaciously served." Texas v. McCullough, 475 U.S. 134, 138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986). In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), for

example, the Court expressly declined to extend the presumption in the context of Kentucky's two-tier trial system. There, the defendant appealed a misdemeanor conviction to a trial *de novo* before a different judge who imposed a more severe sentence. The Court held that the possibility of "personal vindictiveness," presumed to exist in Pearce was not likely since a different judge imposed the more severe sentence.

Also, in Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Court rejected the need for the presumption, characterizing as "de minimis" the possibility that an increased sentence by a different jury upon reconviction after a new trial would be motivated by vindictiveness. Not only was the second jury unaware of the prior conviction, but in contrast to the judge and prosecutor in Pearce and Blackledge, it was considered highly unlikely that the jury would perceive a "personal stake in the prior conviction" or adopt an attitude of "self-vindication." Chaffin, 412 U.S. at 27, 93 S.Ct. at 1983. The Court explained in Chaffin that

> *Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process.

Id., 412 U.S. at 25, 93 S.Ct. at 1982. Pearce, instead was "premised on the apparent need to guard against vindictiveness in the resentencing process." Id.

In Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court considered, for the first time, an allegation of vindictiveness that

arose in a pretrial setting.  In that case, the Court held that the presumption does not arise when a prosecutor follows through on a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged.  The Court declined to characterize this conduct as offensive to due process and distinguished Pearce and Blackledge by noting that those cases dealt

> with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction--a situation very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.

Id., 434 U.S. at 362, 98 S.Ct. at 667.


More recently, in Goodwin, supra, the Court considered whether the prosecutor's addition of a felony charge following a defendant's pretrial demand for a jury trial on a misdemeanor charge gives rise to the presumption.  The Court stated that, in determining whether the circumstances of a particular case pose a "realistic likelihood" of prosecutorial retaliation warranting application of the presumption of vindictiveness, courts should focus upon "the nature of the right asserted" and "the timing of the prosecutor's action."  Id, 457 U.S. at 381-82, 102 S.Ct. at 2493.  The balance weighs in favor of applying the presumption if the right asserted by the defendant requires "duplicative expenditures of prosecutorial resources," or would require the State "to do over what it thought it had already done correctly."  Id., 457 U.S. at 383, 102 S.Ct. at 2494.  If the prosecutor has a "personal stake" or if "institutional biases," such as *stare decisis* and *res judicata*, militate against the retrial of a decided question, the Court found the presumption

-10-

especially appropriate.  Id.  With respect to the timing of the prosecutor's action, the Court stated as follows:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.  In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.  At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.  In contrast, once a trial begins--and certainly by the time a conviction has been obtained--it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted.  Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

Id., 457 U.S. at 381, 102 S.Ct. at 2492-93.  Considering the circumstances of Goodwin in light of the relevant factors, the Court found that the presumption of vindictiveness was not warranted.    The Court deemed it highly unlikely "that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest."  Id, 457 U.S. at 384, 102 S.Ct. at 2494.  Unlike Blackledge, no duplicative expenditures were incurred as a result of the defendant's request, and as compared to Pearce, no judge was asked to do again what he thought he had already done correctly once.  Thus, the deep seated institutional bias against retrying previously decided issues was not offended.  Id.  Finally, the timing of the prosecutor's decision weighed against a finding of the presumption since, in the pretrial context, the assessment of the proper extent of prosecution has not yet been resolved.  Id.

Later, the Court applied the analysis delineated in Goodwin, in Texas v. McCullough, supra, to determine whether the circumstances posed a "realistic likelihood" of retaliation warranting the Pearce presumption. There, the defendant had been convicted of murder and sentenced by a jury to twenty years in prison. The trial judge, however, granted the defendant's motion for a new trial. Three months later, with the same trial judge presiding, the defendant was retried and again convicted of murder by a jury. This time, the defendant elected to have his punishment fixed by the trial judge, and a fifty year sentence was imposed. The defendant asserted that the increased sentence violated Pearce. Weighing the factors cited in Goodwin, the Court concluded that

> [t]he facts of this case provide no basis for a presumption of vindictiveness. In contrast to *Pearce*, McCullough's second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it. . . . [U]nlike the judge who has been reversed, the trial judge here had no motivation to engage in self-vindication. In such circumstances, there is no justifiable concern about "institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals."

Id., 475 U.S. at 138-39, 106 S.Ct. at 979 (internal citations omitted), quoting Chaffin, 412 U.S. at 27, 93 S.Ct. at 1983.

The Court alternatively held that even if Pearce applied, the presumption had been rebutted by the findings of the trial judge describing the grounds for the enhanced sentence. Id., 475 U.S. at 141, 106 S.Ct. at 980. The trial judge relied upon new evidence about the murder, specifically the testimony of two witnesses, which had not been presented by the State at the first trial. The trial judge described the testimony as directly affecting the strength of the State's case at

both the guilt and punishment phases of the trial by bolstering the credibility of the State's key witness, detracting from the credibility of the witnesses for the defense, directly implicating the defendant in the commission of the murder, and shedding new light upon the defendant's life, conduct, mental and moral propensities. McCullough, 475 U.S. at 143, 106 S.Ct. at 981. In addition, the trial judge explained that she learned for the first time on retrial that the defendant had been released from prison only four months before the crime had been committed. Finally, the trial judge candidly admitted that, had she fixed the first sentence, it would have been longer than twenty years. Id., 475 U.S. at 144, 106 S.Ct. at 981-82.

Because the circumstances cited by the trial judge as justifications for the increased sentence did not arise after the first trial, the defendant claimed that the findings were not sufficient to overcome the presumption of vindictiveness. In rejecting that claim, the Court acknowledged that Pearce and its progeny expressly held that, to justify an increased sentence and rebut the presumption of vindictiveness, a sentencing authority must point to "relevant conduct or events that occur subsequent to the original sentencing proceedings."[2] Pointing out, however, that no case had attempted to exhaustively identify all circumstances which constitute valid justifications for increased sentences, the Court refused to restrict the scope of information sufficient to justify a sentence increase to only events which occur after the original sentencing proceeding. Finding that such a

---

[2]Pearce, 395 U.S. at 726, 89 S.Ct. at 2081; Wasman, 468 U.S. at 570-72, 104 S.Ct. at 3223-25 ("Consideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial . . . amply rebuts any presumption of vindictiveness" arising from imposition of a longer sentence after retrial.")

restriction, in some cases, would lead to absurd results[3] without advancing the underlying rationale of Pearce, the Court chose to maintain a general standard, observing that the presumption of vindictiveness "'may be overcome only by objective information . . . justifying the increased sentence.'" McCullough, 475 U.S. at 142, 106 S.Ct. at 981, quoting Goodwin, 457 U.S. at 374, 102 S.Ct. at 2489. The McCullough Court commented that "[n]othing in the Constitution requires a judge to ignore "objective information . . . justifying the increased sentence." Id.

The standard necessary to overcome the presumption has been further explained by state and federal court decisions applying Pearce. For example, in Adamson v. Ricketts, 865 F.2d 1011, 1019 (9th Cir. 1988), the Court held that "[o]nce the presumption of vindictiveness is raised, the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose." In Adamson, the Ninth Circuit concluded that the State had failed to rebut the presumption of vindictiveness which arose from its reinstatement of the first degree murder charge and pursuit of the death

---

[3]As an example of circumstances giving rise to an absurd result by application of the restriction, the Court quoted the following hypothetical provided by the Solicitor General.

> Suppose . . . that a defendant is convicted of burglary, a non-violent, and apparently first, offense. He is sentenced to a short prison term or perhaps placed on probation. Following a successful appeal and a conviction on retrial, it is learned that the defendant has been using an alias and in fact has a long criminal record that includes other burglaries, several armed robbery convictions; and a conviction for murder committed in the course of a burglary. None of the reasons underlying Pearce in any way justifies the perverse result that the defendant receive no greater sentence in light of this information than he originally received when he was thought to be a first offender.

McCullough, 475 U.S. at 141, 106 S.Ct. 980.

-14-

penalty. The State introduced no proof on the issue, and attempted to overcome the presumption by arguing that its decision was an appropriate exercise of prosecutorial discretion, and specifically authorized by the plea agreement under which Adamson agreed to testify. The federal court characterized the State's position as "wholly" missing the point. Id., 865 F.2d at 1019.

Likewise, in State ex rel. Patterson v. Randall, 637 S.W.2d 16, 19 (Mo.banc. 1982), the Court found that the State had failed to advance "objective evidence justifying the prosecutor's decision to seek the death penalty at Patterson's second trial." As explanations for its decision, the State alleged that the original prosecutor did not believe the death penalty should be imposed under any circumstance. The Missouri Supreme Court rejected this explanation, characterizing it as "nothing more than a mistake . . . on the part of the State in assigning a capital murder case to a prosecutor who does not believe in pursuing the death penalty." Id. Secondly, the State argued that the new prosecutor could not have been motivated by vindictiveness because it was the conviction obtained by the original prosecutor which had been reversed. The Court refused to individualize the application of Blackledge, explaining that, once the presumption of vindictiveness arises, it applies with equal force to all members of the prosecuting attorney's office, not exclusively to the original prosecuting attorney. Id. See also Thigpen v. Roberts, 468 U.S. 27, 31, 104 S.Ct. 2916, 2919, 82 L.Ed.2d 23 (1984).

Though courts consistently hold that, to overcome the presumption, the State must present objective evidence which demonstrates that the prosecutor's

decision was motivated by a legitimate purpose, the precise formulation of the test

varies to some degree,[4] as does the type and quality of proof deemed sufficient to

meet the standard.[5]  However, as the Fifth Circuit recognized, even though the

---

[4]See U.S. v. Contreras, 108 F.3d 1255, 1262 (10th Cir. 1997) (Once presumption is established, "the burden shifts to the prosecution to justify its decision with 'legitimate, articulable, objective reasons.'"); U.S. v. Rodgers, 18 F.3d 1425, 1431 (8th Cir. 1994) ("[E]ven if a presumption of vindictiveness applies, the government may rebut it by proffering legitimate, objective reasons for its conduct."); U.S. v. Garza-Juarez, 992 F.2d 896, 906 (9th Cir. 1993) ("Once a presumption of vindictiveness has arisen, 'the burden shifts to the prosecution to show that any increase in the severity of the charges did not stem from a vindictive motive, or was justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness."); U.S. v. Esposito, 968 F.2d 300, 305 (3rd Cir. 1992) ("[E]ven if the presumption applies, the government may rebut it by proffering legitimate, objective reasons for its conduct."); U.S. v. Krezdorn, 718 F.2d 1360, 1365 (5th Cir. 1983) (The presumption of vindictiveness can only be overcome by proof that "events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion."); U.S. v. Gallegos-Curiel, 681 F.2d 1164, 1167 (9th Cir. 1982) (To overcome the presumption, the State must show that its decision "was justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness."); U.S. v. Andrews, 633 F.2d 449, 456 (6th Cir. 1980) ("[W]e think that only objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness."); In Re Bower, 700 P.2d 1269, 1277 (Cal. 1985) ("In order to rebut the presumption of vindictiveness, the prosecution must demonstrate that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge."); Cherry v. State, 414 N.E.2d 301, 305-06 (Ind. 1981) (The State must prove that the "increase in the number or severity of the charges was not motivated by a vindictive purpose."); Atchak v. State, 640 P.2d 135, 144 (Alaska App. 1981)("[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness."); State v. Hinton, 601 P.2d 338, 340 (Ariz. App. 1979) (The presumption may be rebutted by proof of "intervening circumstances or events or of new evidence which the government was excusably unaware at the time of the first charge."); see also Kimberlin v. O.I. White, 7 F.3d 527, 531 (6th Cir. 1993); Jackson v. Walker, 585 F.2d 139, 148 (5th Cir. 1978); Hardwick v. Doolittle, 558 F.2d 292, 301 (5th Cir. 1977).

[5]See Wasman, 468 U.S. at 570-72, 104 S.Ct. at 3223-25 ("Consideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial . . . amply rebuts any presumption of vindictiveness" arising from imposition of a longer sentence after retrial."); Rodgers, 18 F.3d at 1431 (proof that prosecutors were not aware of significance of available evidence indicating a lack of preparation by State is sufficient to overcome presumption); Esposito, 968 F.2d at 306 (proof that prosecution chose not to charge all possible offenses at the first trial because it would have made the trial unmanageable and would have confused the jury was sufficient to rebut the presumption); Andrews, 633 F.2d at 456 (prosecutor's assertion that she made a mistake is not sufficient to rebut the presumption, but her claims that the Grand Jury was unavailable and that she was inexperienced do have an objective basis and deserve consideration.); In Re Bower, 700 P.2d at 1277 (presumption cannot be overcome by the statement that prosecutor was motivated by a reassessment of the evidence against the defendant rather than a desire to punish); U.S. v. Schiller, 424 A.2d 51, 55 (D.C. 1980) (presumption may be overcome more easily by evidence that prosecutor was dealing with multiple criminal acts or a crime spree); Cherry, 414 N.E.2d at 305 (prosecution may overcome the presumption by offering proof that additional evidence has been discovered, elements of the crime not complete at the first trial have now been completed, or an honest mistake or oversight was made at the time of the original decision to prosecute); Hinton, 601 P.2d at 340 (mere ineptitude in filing the lower charge in the first place does not justify a subsequent charge of a more serious crime).

-16-

burden has been placed on the State to overcome the presumption, it is the trial court which must perform the difficult task of determining, in light of the totality of the circumstances, whether the State has met that burden. Jackson, 585 F.2d at 149.

To summarize, we hold that, even in the absence of proof of actual bad faith or malice, a rebuttable presumption of prosecutorial vindictiveness may arise if the circumstances of a case pose a "realistic likelihood" of prosecutorial retaliation. After a defendant has raised the issue of vindictiveness, the trial court must review the circumstances of record and decide whether the prosecutor's actions give rise to a realistic likelihood of prosecutorial retaliation. In assessing whether a "realistic likelihood" of prosecutorial retaliation exists, courts must consider whether the right asserted by the defendant would result in duplicative expenditures of prosecutorial resources, or require the State to do over again what it thought it had already done correctly once. Goodwin, 457 U.S at 383, 102 S.Ct. at 2494. When the circumstances demonstrate that the prosecutor has "a personal stake" or an interest in self vindication, or when institutional biases militate against retrial of a decided question, the balance weighs in favor of recognizing the presumption. Id. Likewise the presumption is especially warranted if the prosecutorial decision to increase the charge or sentence is made after an initial trial is completed rather than in a pretrial context. When application of these factors to the circumstances of a case reveal the existence of a realistic likelihood of prosecutorial retaliation, Pearce applies. The presumption is not, however, absolute. Once the presumption of vindictiveness has been raised, the burden shifts to the State to rebut it by presenting clear and convincing evidence

which demonstrates that the prosecutor's decision was motivated by a legitimate purpose.  Finally, in attempting to overcome the presumption, the prosecutor is not limited to evidence which arose after the original sentencing proceedings, so long as the evidence constitutes "objective information . . . justifying the increased sentence."[6] McCullough, 475 U.S. at 142, 106 S.Ct. at 981, quoting Goodwin, 457 U.S. at 374, 102 S.Ct. at  2489.

In accordance with these principles, we must first determine whether the prosecutor's decision, in this case, to seek the death penalty at Phipps second trial presents a realistic likelihood of prosecutorial retaliation giving rise to the presumption of vindictiveness.  The State contends that the presumption does not apply.  We disagree.

As in Pearce and Blackledge, Phipps' successful appeal culminated in the reversal of his conviction.  He must now be retried.  Duplicative expenditures of prosecutorial resources will be incurred.  Because Phipps exercised his right of appeal, the State must now do again what it thought it had already done correctly.  The institutional biases against retrial of issues already decided militates in favor of the presumption.  The inherent prosecutorial stake in discouraging appeals by "upping the ante," recognized in Blackledge, applies with great force in this case.  Finally, the post trial timing of the prosecutor's decision to pursue the death penalty *after* a successful appeal strongly supports application of the presumption of vindictiveness in this case.  As the United States Supreme Court recognized in

---

[6]But see In Re Bower, 700 P.2d at 1277 (State must show that the new evidence used to rebut the presumption "could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge.").

Goodwin, a change in the charging decision after an initial trial has been completed and a conviction obtained gives rise to a great risk of prosecutorial retaliation. Moreover we agree with the Missouri Supreme Court which stated when confronting this issue:

> Whether the State shall seek the death penalty in a capital murder case is initially within the discretion of the State. Because of the severity of this penalty, the potential of its imposition normally will have the effect of creating apprehension, even during the original trial. Given this, apprehension must necessarily be created in the defendant who would appeal successfully his conviction and then be faced with the State's election to seek the death penalty on retrial when it was waived at the first trial. Because due process of law prohibits the state from responding to a person's invocation of his right of appeal by bringing a more serious charge against a defendant prior to his new trial, the same is necessarily true of subjecting the defendant to a more serious penalty subsequent to his successful appeal.

Randall, 637 S.W.2d at 18. Accordingly, we hold that the State's pursuit of the death penalty following a successful appeal of a conviction for which the death penalty originally was not sought gives rise to a rebuttable presumption of prosecutorial vindictiveness. Having concluded that the circumstances of this case give rise to the presumption of vindictiveness, we must next consider the State's assertion that the presumption has been rebutted in this case.

As we have previously recognized, the presumption of vindictiveness is not absolute and may be overcome by clear and convincing evidence which demonstrates that the prosecutor's decision was motivated by a legitimate purpose. See Footnote 4, supra. Though the prosecutor, in attempting to overcome the presumption, is not limited to evidence which arose after the original sentencing proceedings, the type of evidence sufficient to overcome the

-19-

presumption varies greatly. See Footnote 5, supra. Certainly, a prosecutor's bare assertion that he or she made a mistake when the evidence was initially evaluated is not sufficient to rebut the presumption. Andrews, 633 F.2d at 456; Hinton, 601 P.2d at 340. To overcome the presumption, the State must proffer fact specific, legitimate, on-the-record explanations for its conduct which dispel the appearance of vindictiveness. Esposito, 968 F.2d at 305; Andrews, 633 F.2d at 456.

In this case, no evidence was presented at the hearing on the motion to strike. Moreover, argument at the hearing focused primarily upon principles of double jeopardy and centered little upon the dictates of due process. Neither the defendant nor the prosecution had the benefit of the standards we announce herein. Although, from the statements of counsel in the record on appeal, we are aware of the general nature of the information upon which the State intends to rely to overcome the presumption, no specific proof explaining the prosecutor's decision to seek the death penalty was introduced at the hearing on the defendant's motion to strike. Accordingly, we conclude that this cause should be remanded to the trial court for a hearing in which the State shall have the opportunity to introduce proof to rebut the presumption of vindictiveness. See e.g. Andrews, 633 F.2d at 456; State v. Lewis, 461 So.2d 1250, 1253 (La. App. 1984). We are confident that the trial judge will carefully consider the proof presented, in light of the totality of the circumstances, to determine whether the State has proffered fact specific, legitimate, on-the-record explanations for its decision to seek the death penalty which will dispel the appearance of vindictiveness. If the trial court is satisfied, after hearing the proof, that the presumption has been overcome, the State may seek the death penalty in this case.

-20-

## CONCLUSION

For the reasons previously explained, we conclude that the circumstances of this case pose a realistic likelihood of prosecutorial retaliation which gives rise to a rebuttable presumption of prosecutorial vindictiveness. We reverse the decision of the Court of Criminal Appeals and remand this case to the trial court for a hearing to allow the State an opportunity to rebut the presumption by clear and convincing evidence which demonstrates that the prosecutor's decision was legitimate. If, after hearing the proof, the trial judge determines that the presumption has been overcome, the State may seek the death penalty in this case.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.,

Reid, J. and Birch, J., concur separately  - See Separate Concurring Opinion.

Holder, J., Not Participating.