IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER SESSION, 1999

FILED

January 5, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9901-CC-00007 |
| | ) | |
| Appellee, | ) | |
| | ) | ANDERSON COUNTY |
| VS. | ) | |
| | ) | |
| JAMES HARRIS, | ) | HON. D. KELLEY THOMAS, JR., |
| | ) | JUDGE |
| Appellant. | ) | |
| | ) | (Resentencing) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF ANDERSON COUNTY

FOR THE APPELLANT:

MART S. CIZEK
245 North Main Street, Suite 100
Clinton, TN 37716

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

ELLEN H. POLLACK
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JAMES M. RAMSEY
District Attorney General

JAN HICKS
Assistant District Attorney General
127 Anderson County Courthouse
100 North Main Street
Clinton, TN 37716

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, James Harris, appeals as of right his sentence imposed by the trial court after a remand from this Court. He was originally indicted in December 1987 by an Anderson County Grand Jury for assault with intent to commit first degree murder. After a jury trial in October 1988, the Defendant was found guilty of the crime charged and was sentenced to thirty-five years incarceration. That conviction and sentence was upheld by this Court, and the Tennessee Supreme Court denied review. Subsequently, the Defendant filed a petition for post-conviction relief which was granted on the basis of ineffective assistance of counsel due to counsel's failure to communicate a plea offer to the Defendant. In its opinion upholding the grant of post conviction relief, the supreme court set forth the facts giving rise to the finding of ineffective assistance of counsel as follows:

> Appellee was indicted in Anderson County for assault with intent to commit murder. In pre-trial negotiations the defense counsel and the Assistant District Attorney General in the case discussed the possibility of defendant entering a plea of guilty. In a letter dated 12 February 1988 the State made a plea offer of a five (5) year Range I sentence, with no probation or community correction. The offer was conditioned on the defense waiving any filed motions and would be held open for only 10 days. The letter included a notation stating that if the offer was rejected defense counsel should schedule a motion hearing with the trial court. On 24 February 1988 the Attorney General was notified that defense counsel had scheduled a motion hearing and the prosecution regarded the scheduling of these motions as a rejection of the plea offer. Defense counsel testified at the post-conviction hearing that he received the prosecution's plea offer on the 17th or 18th day of February. He endeavored to inform petitioner of the offer through his parents, but did not communicate with him directly concerning the matter until later in March 1988, after the expiration of the offer.
>
> On 29 February 1988 the Assistant District Attorney General

> informed defense counsel that since no response had been forthcoming within the allotted 10 days the plea bargain offer was no longer valid and no further offers would be made. On the same date State's counsel filed notice informing the trial court and defense counsel that the State intended to seek Range II sentencing at trial.
>
> Defendant went to trial without any knowledge of the plea offer by the State and was found guilty at trial.

Harris v. State, 875 S.W.2d 662, 663 (Tenn. 1994). The supreme court found that trial counsel was ineffective in failing to relay the plea offer to the Defendant and remanded the case to the trial court with instructions for the State to "reinstate its original guilty plea offer and negotiate in good faith." Id. at 667. If the Defendant accepted the offer, the supreme court directed the trial court to "utilize its discretion to accept or reject this or any other plea agreement which may be negotiated. Otherwise, the case will stand for trial in due course." Id.

Upon remand, the Defendant accepted the five-year plea offer, but the trial court rejected it. The Defendant was then again tried and convicted in November 1995 of assault with intent to commit first degree murder. He was sentenced as a Range I standard offender under the Criminal Sentencing Reform Act of 1989 to twenty-three years incarceration. He appealed his conviction and sentence to this Court, which upheld the conviction, but remanded for resentencing. State v. Harris, 978 S.W.2d 109, 118 (Tenn. Crim. App. 1997). Because the crime was committed in 1987, before the effective date of the current sentencing statute, the trial court was required to calculate the appropriate sentence under both the Criminal Sentencing Reform Act of 1989 and the Criminal Sentencing Reform Act

of 1982 and then impose the lesser sentence of the two.  <u>State v. Pearson</u>, 858

S.W.2d 879, 884 (Tenn. 1993).  Because the trial court did not calculate the

appropriate sentence under both statutes and then impose the lesser sentence,

the case was remanded for the trial court to perform this task.  Harris, 978 S.W.2d at 116.

At the new sentencing hearing on November 5, 1998, the trial court calculated the sentence under both the 1989 statute and the 1982 statute.  Under the 1982 statute, the trial court found that the Defendant was a Range II offender because he had committed an especially aggravated offense and that the minimum sentence for the crime in Range II was thirty-two and a half years.  See Tenn. Code Ann. §§ 40-35-107(2), (7), 40-35-109(b) (repealed 1989).  Under the 1989 statute, the trial court found that the Defendant was a Range I standard offender and that the sentence range was fifteen to twenty-five years.  See id. § 40-35-112.  Because the minimum sentence in Range II under the 1982 statute was greater than the maximum sentence in Range I under the 1989 statute, the trial court determined that it should sentence the Defendant under the 1989 statute. It then applied enhancement and mitigating factors and determined that the appropriate sentence was twenty-three years.  Accordingly, the trial court imposed a twenty-three year sentence.  It is from this sentence that the Defendant now appeals, arguing that the trial court erred in using Range II sentencing considerations in calculating the appropriate sentence under the 1982 statute because the State sought Range II sentencing due to vindictive prosecution caused by the Defendant's original trial counsel's ineffective representation.

The statute under which the Defendant was twice convicted provides as

follows:

Assault with intent to murder. - (a) Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, or shall administer or attempt to give any poison for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the state penitentiary for not less than five (5) nor more than twenty-five (25) years.

(b) If bodily injury to the victim occurs as a result of such an assault in violation of subsection (a), the punishment shall be a determinate sentence of confinement in the state penitentiary for life or for a period of not less than five (5) years.

(c) In the case of bodily injury to the victim, the offense defined in subsection (b) of this section is a Class X felony.

Id. § 39-2-103 (repealed 1989). The evidence at trial revealed that following a hearing in relation to the Defendant's divorce from Linda Harris, the Defendant went to his former wife's place of employment at the offices of a pediatric dentist. While Linda Harris was preparing to treat a five-year old girl who was seated in the dental chair, the Defendant entered the area and attacked Ms. Harris with a knife. He cut Ms. Harris' neck with the knife, causing a wound approximately five inches long and at least an inch deep, which barely missed Ms. Harris' carotid artery and which left a permanent scar. He also cut tendons in two of Ms. Harris' fingers. One of Ms. Harris' fingers remains impaired. Thus, under the statute, the Defendant caused bodily injury in the commission of the crime and was subject to a sentence of five years to life imprisonment. See id. § 39-2-103(b) (repealed 1989).

Also, under the 1982 Act, an offense is an "especially aggravated offense" if the offense is a "felony during the commission of which the defendant willfully inflicted serious bodily injury upon another person." Id. § 40-35-107(2) (repealed 1989). "'Serious bodily injury' includes bodily injury which involves a substantial risk of death; unconsciousness; extreme physical pain; protracted and obvious

disfigurement; or protracted loss or impairment of the function of a bodily member or organ." Id. § 40-35-107(5)(B) (repealed 1989). The victim spent three days in the hospital for a neck wound that barely missed her carotid artery, she has a permanent scar on her neck, and she suffers impairment of the function of one of her fingers. Thus, it is apparent that she suffered "serious bodily injury" under the statute and the crime could be considered an "especially aggravated offense." The trial court below found that to be the case, and the Defendant does not challenge that finding.

In addition to providing that an offense may be considered an "especially aggravated offense," the statute provides that "[i]f the district attorney general believes that a defendant should be sentenced . . . for an especially aggravated offense . . . he shall file a statement thereof with the court and defense counsel before trial or acceptance of a guilty plea on the primary offense." Id. § 40-35-202(a) (repealed 1989). When sentencing a defendant, the trial court must base the sentence "on the evidence in the record of the trial, the sentencing hearing, the pre-sentence report, and in the case of an especially aggravated offense or a persistent offender, the statement filed by the district attorney general with the court as required by § 40-35-202." Id. § 40-35-210(d) (repealed 1989). Thus, before a court may sentence a defendant for an especially aggravated offense, the prosecution must request such a sentence. If, after such a request, the court finds beyond a reasonable doubt that the defendant committed an especially aggravated offense, then the defendant is to be sentenced within Range II. See id. § 40-35-107(7) (repealed 1989). A Range II sentence is a sentence "not less

than the minimum sentence plus one-half of the difference between the maximum sentence and the minimum sentence, and not more than the maximum sentence as provided by law," which in this case would be a sentence of thirty-two and a half years to life. See id. § 40-35-109(b) (repealed 1989).

As noted by the supreme court in the appeal from post-conviction relief, on the same day that she informed defense counsel that the plea bargain offer was no longer valid and no further offers would be made, the assistant district attorney general filed a notice informing the trial court and defense counsel of the State's intent to seek Range II sentencing at trial because the Defendant had committed an especially aggravated offense. See Harris, 875 S.W.2d at 663, 665. In a footnote, the supreme court stated, "There is some indication in the record at this point evidencing a developing friction between counsel." Id. at 665 n.2. From these notations in an opinion by our supreme court, the Defendant now asks us to presume, without further proof, that the assistant district attorney general filed the notice due to prosecutorial vindictiveness caused by original trial counsel's ineffectiveness in failing to communicate the plea to the Defendant and in negotiating with the State.

> In our judicial system,
>
> so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long

as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).  Also, the original indictment, which often begins plea negotiations, "does not necessarily define the extent of the legitimate interest in prosecution.  For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." United States v. Goodwin, 457 U.S. 368, 380 (1982).  While the prosecutor no doubt had the discretion to seek enhanced punishment because the facts clearly support the finding that the Defendant committed an especially aggravated offense, the Defendant asks us to find that the prosecutor exercised that discretion out of vindictiveness.

In the case of North Carolina v. Pearce, 395 U.S. 711, 724-25 (1969), the United States Supreme Court held that it is a violation of basic due process to punish a person because he has done what the law plainly allows.  The defendant in Pierce successfully appealed his conviction and then received a greater sentence on retrial.  While concluding that the Constitution does not bar the imposition of a more severe sentence after retrial, the Court held that the Due Process Clause of the Fourteenth Amendment prevents increased sentences which are actually or likely motivated by a vindictive desire to punish a defendant for the exercise of a statutory or procedural right.  Id. at 723-24.  To prevent actual vindictiveness and the fear of vindictiveness on the part of a defendant, the

Supreme Court established the rule that

> whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Id. at 726. The Supreme Court later interpreted this rule as applying a presumption of vindictiveness which may be overcome only by objective information in the record justifying the increased sentence. Goodwin, 457 U.S. at 374.

In Blackledge v. Perry, 417 U.S. 21, 27-28 (1974), the Supreme Court extended the presumption of vindictiveness to post-trial prosecutorial conduct which could be motivated by vindictiveness. In that case, the defendant was convicted of assault in a court having exclusive jurisdiction for the trial of misdemeanors, and when he appealed his conviction and requested a trial de novo in the Superior Court, the prosecutor obtained a felony indictment charging the defendant with assault with a deadly weapon. The Court determined that such a situation posed "a realistic likelihood of 'vindictiveness'" and explained its reasoning for extending the presumption of vindictiveness as follows:

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals – by

-11-

> "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy – the State can insure that only the most hardy defendants will brave the hazards of a <u>de novo</u> trial.

<u>Id.</u> at 27-28.

While the Supreme Court has imposed a presumption of vindictiveness when a defendant receives a harsher sentence upon retrial and when a defendant is indicted for a more serious offense after appealing a conviction, it has not yet applied the presumption in a pretrial setting. <u>See</u> <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978); <u>United States v. Goodwin</u>, 457 U.S. 368 (1982). The applicability of the presumption in a pretrial setting was first considered by the Supreme Court in <u>Bordenkircher</u>, 434 U.S. at 362-65. There, the defendant was indicted on a charge of uttering a forged instrument in the amount of $88.30, which was an offense punishable by a term of two to ten years in prison. During plea negotiations, the prosecutor offered a plea agreement and further told the defendant that if he did not plead guilty, the State would seek an indictment under the Kentucky Habitual Criminal Act which would subject the defendant to a mandatory life sentence due to two prior felony convictions. The defendant rejected the plea agreement and was subsequently indicted and convicted under the Habitual Criminal Act. In distinguishing this situation from <u>Pearce</u> and <u>Blackledge</u>, the Supreme Court noted that

> [i]n those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction – a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power."

Bordenkircher, 434 U.S. at 362 (quoting Parker v. North Carolina, 397 U.S. 790, 809 (1970) (opinion of Brennan, J.)). Recognizing that a defendant may not be punished for exercising a legal right, the Court determined that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Id. at 363. It subsequently held that a presumption of vindictiveness does not arise when a prosecutor follows through with a threat made during plea negotiations to bring additional charges against a defendant if the defendant refuses to plead guilty. Id. at 365.

The applicability of a presumption of vindictiveness again came before the Supreme Court in the pretrial context in the case of United States v. Goodwin, 457 U.S. 368 (1982). In Goodwin, the Court considered whether the prosecutor's addition of a pretrial felony charge following the defendant's pretrial demand for a jury trial on a misdemeanor charge gives rise to a presumption of vindictiveness. While acknowledging that it has been necessary to "presume" a vindictive motive in some circumstances, the Court stated, "Given the severity of such a presumption, however, which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct – the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists." Id. at 373. In comparing post-trial actions of prosecutors to pretrial actions, the Supreme Court had the following to say:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor

may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins – and certainly by the time a conviction has been obtained – it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in Bordenkircher, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

> . . . This Court in <u>Bordenkircher</u> made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified.

<u>Id.</u> at 381-83.

While the Supreme Court did not hold that the presumption can never apply in a pretrial context, in light of its reasoning in <u>Bordenkircher</u> and <u>Goodwin</u>, we cannot find the existence of a presumption of prosecutorial vindictiveness just because the prosecutor seeks enhanced punishment after plea negotiations fail and defense counsel files motions with the trial court. <u>See</u> <u>State v. Phipps</u>, 959 S.W.2d 538, 546 (Tenn. 1997) (setting forth when the presumption of vindictiveness arises after considering the Supreme Court precedent). Had the prosecutor sought enhanced punishment after the Defendant's conviction had been overturned and the case was sent back for retrial, there might very well have been a different outcome in this case. <u>See</u> <u>id.</u> However, the situation here is precisely the type of situation in which the Supreme Court said the presumption does not arise. <u>See</u> <u>Goodwin</u>, 457 U.S. at 381-82.

Because the presumption is not applicable, for us to find prosecutorial vindictiveness in this pretrial context, the Defendant would have to prove actual vindictiveness. <u>See</u> <u>id.</u> at 384. The Defendant has pointed us to no proof of vindictiveness. He has only cited our supreme court's opinion upholding the grant of post-conviction relief, in which the court noted that the prosecutor filed the notice of intent to seek enhanced punishment on the same day it notified

defense counsel that it viewed the plea offer as rejected and that no further offers would be forthcoming. See Harris, 875 S.W.2d at 663, 665. The court also noted that there was some evidence of a developing friction between counsel at this point. See id. at 665 n.2. Without the presumption of vindictiveness, this falls far short of establishing by any standard that the filing of the notice was improperly motivated. It is undisputed that the facts supported the enhanced sentence and that the prosecutor had the discretion to seek an enhanced sentence. Therefore, we uphold the trial court's finding that the minimum sentence under the 1982 Act would be thirty-two and a half years because the Defendant committed an especially aggravated offense. Accordingly, the Defendant was properly sentenced to twenty-three years under the 1989 Act.

The judgment is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
DAVID G. HAYES, JUDGE