# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE

March 14, 2017 Session Heard at Belmont University College of Law[1]

## STATE OF TENNESSEE v. DANIELLE CHANDRIA JENSEN

**Appeal from the Criminal Court for Putnam County**
**No. 2015-CR-210   David A. Patterson, Judge**

_____

## No. M2016-01553-CCA-R10-CD

_____

Following the trial court's denial of an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the State sought and was granted permission for an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. In this appeal, the State argues that the trial court erroneously dismissed a burglary count in a superseding indictment against the Defendant, Danielle Chandria Jensen, who had previously been charged with theft of property valued at $500 or less, assault, and criminal trespass involving the same conduct. See T.C.A. §§ 39-13-101(a)(1), 39-14-103, -105(a)(1), -402(a)(3), -405 (Supp. 2014). We affirm the judgment of the trial court dismissing the burglary count.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bret T. Gunn, Assistant District Attorney, for the Appellant, State of Tennessee.

Craig P. Fickling, District Public Defender; and Benjamin D. Marsee, Assistant Public Defender, for the Defendant-Appellee, Danielle Chandria Jensen.

## OPINION

On October 23, 2014, a police officer charged Jensen by affidavit of complaint with theft of property valued at $72.17, a Class A misdemeanor; assault, a Class A

---

[1] Oral argument was heard in this case on March 14, 2017, at Belmont University College of Law in Nashville, Tennessee.

misdemeanor; and criminal trespass, a Class C misdemeanor, for conduct occurring at a Wal-Mart store in Cookeville, Tennessee. Although the charges originated in the Putnam County General Sessions Court, Jensen waived a preliminary hearing on these charges, and her case was bound over to the grand jury for consideration on March 11, 2015. The prosecutor assigned to the case subsequently moved for the Putnam County Criminal Court to enter an order of nolle prosequi as to the criminal trespass charge, explaining that it would be prosecuting Jensen only for the primary charges of theft and assault and would not be prosecuting her for the secondary charge of criminal trespass. An order of nolle prosequi on the criminal trespass charge was entered on April 28, 2015.

On May 5, 2015, the Putnam County Grand Jury returned an indictment charging Jensen with one count of theft of property valued at $500 or less and one count of assault, which was consistent with the charges bound over from general sessions court and the order of nolle prosequi as to the criminal trespass charge. On October 6, 2015, the case proceeded to trial in the Putnam County Criminal Court. On the morning of trial, the prosecutor made a motion to delete from the theft count the specific items alleged to have been stolen, which the trial court granted. Following the presentation of the evidence at trial, the jury deliberated but was unable to reach a verdict on the charged offenses of theft and assault. The trial court declared a mistrial, and the case was placed on the trial court's docket for November 9, 2015.

On November 2, 2015, less than one month after the mistrial and one week prior to the November 9, 2015 court date, the prosecutor sought and obtained a superseding indictment charging Jensen with three counts: burglary, theft of property valued at $500 or less, and assault. While the theft and assault counts of the superseding indictment were identical to the amended charges in the original indictment, the burglary count, which was a new charge, alleged that Jensen also committed the offense of burglary during the October 23, 2014 incident, which increased her highest charged offense from a Class A misdemeanor to a Class D felony.

On May 3, 2016, Jensen filed a motion to dismiss the burglary count in the superseding indictment on the basis that this charge violated her due process rights under the Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee Constitution. In her motion, which alleged that the burglary charge was the result of prosecutorial vindictiveness, Jensen asserted that "[n]o facts on this issue have changed since the day [she] was first charged" and that no trial testimony "shed any additional light on these allegations that would have been previously unknown to the State." Jensen also argued that "on the face of the record, it appears that the State sought increased charges against [her] simply because she chose to exercise her right to trial and defeated the State's efforts to convict her," which caused a presumption of prosecutorial vindictiveness to arise. She also asserted that because the State failed to show by clear

and convincing evidence that "its decision to increase the level of charges against [her] was motivated by a legitimate purpose," the burglary count must be dismissed.

On May 11, 2016, the State filed a response to the motion to dismiss that included a detailed affidavit explaining the reason for the superseding indictment. In this response, the State asked the trial court to deny Jenson's motion because its affidavit rebutted any presumption of prosecutorial vindictiveness and because no actual vindictiveness existed. In the attached affidavit, the prosecutor assigned to Jensen's case made the following averments:

1. I prepared the initial indictment for presentation to the Grand Jury. I noted that there was a bound over criminal trespass charge along with the theft. Wal-[M]art did not provide a copy of any paperwork substantiating this charge, so I decided to dismiss the Class C misdemeanor and have the theft presented to the Grand Jury.

2. On September 22, 2015, the case was set for trial on short notice for October 6, 2015, only two weeks in the future.

3. In preparing for trial, I learned more about [Jensen's] prior involvement with Wal-Mart and was told by the prosecuting witness for Wal-Mart that [Jensen] had been banned from the store and there should be written proof of this in the older file at Wal-Mart. The witness no longer worked for Wal-Mart.

4. Knowing that I did not have time for a superseding indictment before the trial, I did not give any thought to that possibility.

5. If I had had more time, I likely would have explored the possibility of a superseding indictment further, including asking Wal-Mart to locate the form.

[6]. The trial was held on October 6, 2015, and resulted in a hung jury.

[7]. On October 12, 2015, I asked for and received a copy of the ban form. The emails from the Wal-Mart employee and a copy of the form are attached to this affidavit. I did not know prior to this time that the form used by Wal-Mart contained language that the ban was permanent until rescinded by Wal-Mart. Since the banning occurred more than 1 year prior to the offense date of October 23, 2014, the exact language of the ban form was important.

[8]. At this time I still had not decided to seek a superseding indictment charging burglary. I was aware that burglary was not normally used in retail shoplifting cases, although there had been some talk around the office about this possibility.

[9]. In mid-to-late October I attended the District Attorney's Conference in Chattanooga. While there I had occasion to have lunch with an Assistant District Attorney in Knoxville. That ADA told me that they had started charging shoplifters with burglary if they had previously been banned from the store. I have attached an article about this policy that was published on Nov[ember] 3, 2015, and another article published last month where a jury convicted a defendant of burglary on these facts in Knoxville.

[10]. Around this time frame I also had discussions with District Attorney General Dunaway about the general propriety of using the burglary statute in this context. He expressed his support of this approach for repeat shoplifters.

[11]. I also called the manager of the Wal-Mart involved and determined that the company does give individual store managers the power to institute a policy whereby persons are banned from the property for certain behaviors. He assured me that he would come to court and testify to that effect as needed.

[12]. Based on the totality of the circumstances and encouraged by the position of the Knox County District Attorney's Office and General Dunaway's position on the subject, I submitted the charge[] of burglary to the Grand Jury on November 2, 2015.

[13]. Subsequently, I have examined each shoplifting case closely to determine if the person has previously been banned, including making calls to the store if the situation is unclear. I intend to continue to charge this offense.

[14]. I have no personal animosity towards [Jensen]. The fact that she took this case to trial does not disturb me in the least. Although the result was not what I wanted, [Jensen] is certainly not to blame. She did not commit perjury at the trial or do anything that was improper. I enjoy trial work and certainly do not begrudge her desire to have another. If Ms. Jensen's trial had been postponed for some reason and no trial had been had on October 6, 2015, I would have proceeded exactly as I have.

Pursuant to an agreement between the parties, the trial court was to base its ruling on the motion to dismiss only on the contents of Jensen's motion and the prosecutor's affidavit, with Jensen explicitly waiving her opportunity to cross-examine the prosecutor.

The trial court, in its order on Jensen's motion to dismiss, provided the following conclusions of law:

> The allegation at issue is new to this Court. The Court has not previously addressed a motion to dismiss due to vindictive prosecution. In fact, during sixteen years of prior service as an Assistant District Attorney General and during the nine years of service as a judge, the Court has not known of such an allegation being raised by motion in the Thirteenth Judicial District.
>
> [Jensen's] motion, memorandum, and submitted case law demonstrate that the allegation is not new to Tennessee. Tennessee appellate decisions have favored the State.
>
> The facts of this case are unique.
>
> In making its ruling, the Court considers the unique facts of this case, the applicable law, the response of the State submitted by [the prosecutor], and the dictates of due process and fundamental fairness.
>
> As chief law enforcement officer for the Thirteenth Judicial District, the District Attorney General and his assistants have the responsibility as ministers of justice. This is a great, serious, and powerful responsibility. The citizens of [the] Thirteenth Judicial District rely upon its District Attorney to fulfill this responsibility, and are comforted when they are well-represented by their District Attorney.
>
> In making his decisions, the prosecutor has wide discretion with regard to deciding whether to prosecute, what charges to file, and whether to permit a plea agreement. It is incumbent upon the prosecutor to have a knowledge of the facts supporting the charged offense prior to endorsing an indictment for presentation to a Grand Jury. The endorsing prosecutor should find reason for bringing the charge.
>
> In making his decision to dismiss a charged offense, the prosecutor should likewise find reason for dismissal.

Here, [Jensen] was originally charged with criminal trespass, a crime proven by showing that [Jensen] knowingly entered or remained on property belonging to someone else and that [Jensen] did not have the owner's consent to enter or remain.

The time between when the charges were bound over and the presentment of the original indictment to the Grand Jury was one and a half months. During that time, [the prosecutor] did nothing to determine the merits of the trespass charge. In fact, he secured its dismissal. His affidavit recites, "Wal-Mart did not provide a copy of any paperwork substantiating this charge, so I decided to dismiss the Class C misdemeanor . . ." [The prosecutor's] affidavit further recites, "In preparing for trial, I learned more about [Jensen's] prior involvement with Wal-Mart and was told by the prosecuting witness for Wal-Mart that she had been banned from the store and there should be proof of this in the older file at Wal-Mart. The witness no longer worked for Wal-Mart."

His affidavit further reads, "Knowing that I did not have time for a superseding indictment before trial, I did not give any thought to that possibility."

The issue for this Court's review is:

Considering these facts, should the State be allowed to supersede its indictment to add an additional felony offense after the jury was unable to reach a unanimous decision on the original indictment?

The simple answer is, "No."

[The prosecutor] set this case in motion in this circuit level Court with his endorsement and presentation of his two[-]count indictment to the Grand Jury. He then determined that the case would be tried on those two counts. He presented his case to a jury that he selected, and presented to that jury the witnesses that he chose. Jeopardy attached. [Jensen] was put in peril of conviction. And a mistrial was declared.

In justifying his action that now results in a felony burglary being charged, the prosecuting attorney points his finger at his witnesses for his own failure to exercise his responsibility to investigate the incident. He blames poor timing for his failure to seek a superseding indictment prior to trial for crimes he knows were committed while preparing for that trial.

This Court has never denied the State's request to continue a case so that the State might supersede indictment. In fact, on May 2, 2016, two weeks ago, [the prosecutor] announced that the State would be seeking a superseding indictment regarding a child rape case. This case was set for trial on May 12, 2016. The Court granted [the prosecutor's] request for a continuance so that the Defendant could be charged with all offenses known to the State prior to trial.

A prosecuting attorney must act responsibly and use his authority and power to diligently seek justice. The resources of the Thirteenth District's criminal justice system are not the prosecutor's personal resources to be expended as he sees fit. Misdemeanor trials cannot be conducted as dress rehearsals for later felony trials.

This case demonstrates poor investigation, poor charging choices, and poor presentation on the part of the State. All that was known about the subject incident was known by the prosecutor prior to trial. This deficiency on the State's account does not provide a sound basis for burdening [Jensen] with the addition of a felony offense after a mistrial.

The Court finds that [Jensen] has raised a presumption of prosecutorial vindictiveness, and the State has answered by demonstrating that its decision to seek increased charges was not motivated by vindictiveness. However, the Court finds that the State's lack of due diligence to properly indict and/or seek a superseding indictment prior to [the] trial resulting in mistrial requires a dismissal of Count 1[, the burglary count,] of the superseding indictment.

On June 6, 2016, the State filed a motion for permission to file an interlocutory appeal challenging the dismissal of the burglary count. The trial court denied the application but did not provide an explanation for the denial in its order. Following the denial of its Rule 9 application, the State filed a Rule 10 application for an extraordinary appeal, which this court granted after determining that review of this issue was necessary to prevent possible irreparable injury to the public's interest.

## ANALYSIS

The State contends that the trial court erred in dismissing the burglary count of the superseding indictment. It claims that Jensen's motion to dismiss was "premised on vague allegations of prosecutorial vindictiveness" and that the trial court's order failed to identify the specific ground upon which it relied in dismissing the burglary charge. In

any case, the State asserts that to the extent that the trial court dismissed the charge due to Jensen's allegations of "prosecutorial vindictiveness," it properly rebutted those allegations with the prosecutor's affidavit. As support, it cites the trial court's conclusion that while Jensen had raised a presumption of prosecutorial vindictiveness, the State "answered by demonstrating that its decision to seek increased charges was not motivated by vindictiveness." The State also argues that this affidavit, which explained that the burglary charge was obtained after new proof and new authority supporting the charge were discovered, was uncontroverted because Jensen failed to present any proof refuting it in the trial court. In response, Jensen contends that the trial court granted her motion after finding that due process and fundamental fairness required the dismissal. Jensen adds that because the trial court acted within its discretion in dismissing the charge on these grounds, the judgment should not be reversed.

Initially, we recognize that "[t]he decision whether to dismiss an indictment lies within the discretion of the trial court." State v. Harris, 33 S.W.3d 767, 769 (Tenn. 2000) (citing State v. Benn, 713 S.W.2d 308, 311 (Tenn. 1986)). However, because it appears that the trial court in Jensen's case relied on the constitutional protections of due process and fundamental fairness in dismissing the burglary count, we believe that a de novo standard of review, rather than an abuse of discretion standard, should be applied. See State v. Merriman, 410 S.W.3d 779, 791 (Tenn. 2013) (citing Ornelas v. United States, 517 U.S. 690, 697-99 (1996)) (concluding that a de novo standard of review is appropriate when reviewing a trial court's decision regarding a constitutional issue). While we believe the de novo standard is the appropriate standard of review in this case, we note that the trial court's findings of fact are entitled to substantial deference. See id. (citing Ornelas, 517 U.S. at 699).

We also recognize that prior to the return of an indictment, a prosecutor "'has virtually unbridled discretion in determining whether to prosecute and for what offense.'" State v. Mangrum, 403 S.W.3d 152, 163 (Tenn. 2013) (quoting Dearborne v. State, 575 S.W.2d 259, 262 (Tenn. 1978)). "'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense . . . , the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely within his discretion.'" Harris, 33 S.W.3d at 771 (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)).

Even after the return of an indictment, a prosecutor has the discretion to reconvene the grand jury for the purpose of considering additional evidence and possibly returning a superseding indictment. Mangrum, 403 S.W.3d at 164 (citing Harris, 33 S.W.3d at 771). "Although the State may not bring a superseding indictment to harass or intimidate the accused, a legitimate decision to bring a superseding indictment is uniquely within the State's authority." Harris, 33 S.W.3d at 771. While a prosecutor has broad discretion in

seeking a superseding indictment, this discretion is not without limits, and a trial court "retain[s] the authority to dismiss an indictment based upon defects in the indictment or improper delay in presenting a charge to a grand jury." Mangrum, 403 S.W.3d at 164 (citing Harris, 33 S.W.3d at 771). The United States Supreme Court has recognized that a prosecuting attorney's discretion "carries with it the potential for both individual and institutional abuse," and although a prosecutor's discretion is broad, "there are undoubtedly constitutional limits upon its exercise." Bordenkircher, 434 U.S. at 365. One such limit is the right to due process of law.

A defendant is guaranteed due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and under Article I, sections 8 and 9 of the Tennessee Constitution. Punishing an individual for choosing to exercise his or her constitutional rights violates due process. North Carolina v. Pearce, 395 U.S. 711, 724-25 (1969); State v. Phipps, 959 S.W.2d 538, 540 (Tenn. 1997).

In Phipps, the Tennessee Supreme Court held that "even in the absence of proof of actual bad faith or malice, a rebuttable presumption of prosecutorial vindictiveness may arise if the circumstances of a case pose a 'realistic likelihood' of prosecutorial retaliation." 959 S.W.2d at 546. Once a defendant raises the issue of vindictiveness, the trial court must review the circumstances of record and determine whether the prosecution's actions give rise to a realistic likelihood of prosecutorial retaliation. Id. In determining whether a "realistic likelihood" of retaliation exists, courts must consider the following factors: (1) whether the right asserted by the defendant would result in duplicative expenditures of prosecutorial resources; (2) whether the prosecution would have to do over again what it thought it had already done correctly the first time; (3) whether the prosecutor has a personal stake or an interest in self-vindication; (4) whether institutional biases militate against retrial of a decided question; and (5) whether the prosecution's decision to increase the charge or sentence is made after an initial trial is completed rather than an a pretrial context. Id.

If the application of these factors to the circumstances of the case "reveal[s] the existence of a realistic likelihood of prosecutorial retaliation," then a presumption of prosecutorial vindictiveness arises, and the burden shifts to the State to rebut this presumption "by presenting clear and convincing evidence which demonstrates that the prosecutor's decision was motivated by a legitimate purpose." Id. In overcoming this presumption, the State must present "fact-specific, legitimate, on-the-record explanations for its conduct which dispel the appearance of vindictiveness." Id. at 547.

In Phipps, the defendant appealed his first degree murder conviction and was granted a new trial. Id. at 539. Although the State had not sought the death penalty in the defendant's first trial, upon remand of the case, the State filed a notice of its intent to seek

the death penalty. The defendant moved to strike the notice on the grounds that due process and double jeopardy protections precluded the State from seeking the death penalty in the new trial when it had not sought the death penalty in the first trial. Id. The trial court granted the motion to strike the notice, and the State was granted permission to file an interlocutory appeal. Id. at 540. After holding that the circumstances in the case gave rise to a rebuttable presumption of prosecutorial vindictiveness, the Tennessee Supreme Court remanded the case to the trial court for a hearing in which the State would be given an opportunity to rebut the presumption by clear and convincing evidence demonstrating that the prosecutor's decision was motivated by a legitimate purpose. Id. at 547.

The State cites Frank Michael Vukelich for the proposition that charging additional crimes following a mistrial does not, by itself, create a presumption of prosecutorial vindictiveness and that even if it did, the filing of an affidavit showing that the new charges were not motivated by animosity rebuts this presumption. No. M1999-00618-CCA-R3-CD, 2001 WL 1044617, at *8-9 (Tenn. Crim. App. Sept. 11, 2001), perm. app. denied (Tenn. Apr. 1, 2002). In that case, the State, following a mistrial due to a hung jury, charged the defendant with additional counts of money laundering. Id. at *7. The defendant appealed, alleging that the additional counts were the result of prosecutorial vindictiveness. Id. After applying the factors in Phipps, this court concluded that the presumption of prosecutorial vindictiveness did not arise. Id. at *8. However, it held that even assuming for the sake of argument that the presumption had arisen, the State's two affidavits presented clear and convincing evidence rebutting this presumption. Id. at *9. The prosecutor's affidavit stated that although he was aware of a witness's allegations that the defendant committed additional counts of money laundering, he felt he could not prosecute the defendant based on this evidence because the witness was an accomplice. Id. The prosecutor added that during the cross-examination of this witness during the defendant's first trial, certain details were revealed that had not been previously discovered and that further investigation of these new details resulted in the additional money laundering counts. Id. The investigating officer's affidavit detailed the additional investigation that led to the new money laundering counts. Id. This court held that the "uncontradicted affidavits provide[d] clear and convincing evidence that the prosecutor did not act vindictively." Id.

The State claims that just as in Frank Michael Vukelich, the prosecutor in Jensen's case filed an affidavit explaining that its decision to seek a superseding indictment was not motivated by animosity toward Jensen. We conclude that Frank Michael Vukelich is easily distinguishable from the present case because the prosecutor in Jensen's case never acquired any new evidence at trial or after the mistrial that necessitated charging her with burglary. Even though the prosecutor was well-aware of Jensen's ban from Wal-Mart prior to her first trial, he dismissed the criminal trespass charge without fully

- 10 -

investigating the circumstances surrounding the ban. Moreover, the prosecutor never requested a continuance in order to pursue a superseding indictment charging burglary prior to Jensen's first trial, even though the trial court would have likely granted it. As we will explain, the prosecutor's decision to charge Jensen with burglary on these facts violated due process, but we also conclude that Frank Michael Vukelich is not persuasive because no new evidence justified the burglary charge in Jensen's case.

The State has asserted that the ground upon which the trial court dismissed the burglary charge is unclear. We disagree. Jensen filed a motion to dismiss the burglary charge on due process grounds and that is what the trial court did. The trial court, after reviewing both Jensen's motion and the State's affidavit, entered an order containing detailed findings of fact and conclusions of law. The court determined that the prosecutor did nothing to determine the merits of the criminal trespassing charge prior to securing its dismissal. The court also found that although this prosecutor was aware of the facts supporting the burglary charge prior to Jensen's trial, he failed to seek a superseding indictment until after the mistrial. The court noted that this case "demonstrates poor investigation, poor charging choices, and poor presentation on the part of the State" and that the State's deficiencies did not "provide a sound basis for burdening [Jensen] with the addition of a felony offense after a mistrial." The trial court then held that "the State's lack of due diligence to properly indict and/or seek a superseding indictment prior to [the] trial resulting in mistrial" required the dismissal of the burglary count in the superseding indictment.[2] We agree that the delay in charging Jensen with burglary was attributable to the State because it had evidence of the ban prior to Jensen's first trial and failed to investigate it. At the point that the State chose to charge Jensen with burglary, it had the benefit of knowing all of the defense's evidence and its theory of the case from the first trial, which resulted in a mistrial. The record supports the trial court's finding that the State violated Jensen's due process rights by causing unnecessary delay in presenting the burglary charge against Jensen.

Dismissal of the burglary charge can also be upheld on the basis that the State failed to rebut the presumption of prosecutorial vindictiveness, regardless of whether the trial court explicitly relied on prosecutorial vindictiveness in its order. Applying the factors in Phipps to this case, we recognize that Jensen's assertion of her right to a jury trial following the mistrial means that duplicative expenditures of prosecutorial resources will be incurred to see the second trial to completion. Similarly, the prosecution will now have to do over again what it thought it had already done correctly the first time, despite the unforeseen mistrial, because it will have to try Jensen a second time for her conduct at Wal-Mart. While the affidavit shows that the prosecutor was not seeking retribution

---

[2] Because the theft and assault charges mirrored those presented in the first indictment, there was no need for the court to dismiss the other charges contained within the superseding indictment.

- 11 -

against Jensen individually, it does show that the prosecutor had a strong desire to prosecute all individuals for burglary who had been arrested for shoplifting or theft who previously had been banned from the relevant store, a questionable goal when the harshness of a felony conviction and sentence for burglary is compared to the wrong committed, even for a repeat shoplifter. Moreover, although the record does not show that institutional biases militated against retrial of a decided question, the prosecutor's decision to charge Jensen with burglary, a felony, following the completion of the first misdemeanor trial, which ended in a mistrial due to a hung jury, also supports the application of the presumption of prosecutorial vindictiveness in this case.

In Goodwin, the United States Supreme Court held that a post-trial change in the charging decision is more like to be improperly motivated than a pre-trial decision to change charges:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

457 U.S. 368, 381 (1982). Because Jensen's first trial progressed to the jury deliberation stage before ending in a hung jury and mistrial, it is appropriate to view the prosecutor's change in the charging decision as occurring during the post-trial stage. See id.; but see Frank Michael Vukelich, 2001 WL 1044617, at *8 (concluding, without elaboration, that "although the decision to add the money laundering counts came following the first trial, that trial was not "completed" because it resulted in a mistrial" due to a hung jury). For all of these reasons, we agree with the trial court that the circumstances in Jensen's case "reveal the existence of a realistic likelihood of prosecutorial retaliation," which gives rise to a presumption of prosecutorial vindictiveness.

Next, we must determine whether the State presented clear and convincing evidence showing that the prosecutor's decision to charge Jensen with burglary following

the mistrial was motivated by a legitimate purpose. This determination is limited to the assistant district attorney's affidavit. When the State obtained the superseding indictment for burglary, it increased Jensen's charges for the same conduct that was the subject of the first trial. Although Jensen could have only been charged with misdemeanor theft for the items she stole, she was suddenly charged with burglary and theft for taking things valued at approximately $72.00. As opposed to other cases, the record indicates that the prosecutor in this case never gave Jensen the chance to forego being charged with burglary in exchange for entering a guilty plea to the misdemeanor charges of theft and assault, a practice that likely violates due process in its own right. Compare State v. J.C. Fair, No. W2007-00730-CCA-R3-CD, 2009 WL 2501991, at *7 (Tenn. Crim. App. Aug. 14, 2009) (concluding that a presumption of prosecutorial vindictiveness did not arise when prosecutor informed defendant that he intended to seek re-indictment for the greater charge but gave defendant the opportunity to enter a guilty plea to the lesser charge, which the defendant refused, before obtaining a new indictment prior to trial); State v. David Johnson, No. W1998-00687-CCA-R3-CD, 2001 WL 278093, at *12 (Tenn. Crim. App. Mar. 14, 2001) (finding no presumption of prosecutorial vindictiveness when after a mistrial on the charge of second degree murder, the State informed the defense that it would seek an indictment for first degree murder and then offered to allow the defendant to plead guilty to second degree murder, which the defendant refused, before the State sought and obtained a superseding indictment for first degree premeditated murder and felony murder).

Although the prosecutor was aware of Jensen's ban from Wal-Mart prior to her first trial, he dismissed the criminal trespass charge and declined to seek a superseding indictment for the burglary charge, despite the fact that a continuance for that purpose would have been most likely granted by the trial court. See Blackledge v. Perry, 417 U.S. 21, 29 n.7 (1974) (concluding that although the prosecutor's decision to obtain a felony indictment after the defendant exercised his statutory right to appeal violated due process, a different result might have occurred "if the State had shown that it was impossible to proceed on the more serious charge at the outset"); State v. David Neal Davis, No. M2009-00691-CCA-R3-CD, 2011 WL 1631828, at *10 (Tenn. Crim. App. Apr. 19, 2011) (concluding that the State had overcome any presumption of prosecutorial vindictiveness because the victim's testimony at the first trial provided the basis for the subsequent indictment on the additional and greater charges); Frank Michael Vukelich, 2001 WL 1044617, at *9 (holding there was clear and convincing evidence that the prosecutor did not act vindictively because uncontradicted affidavits established that new evidence in the first trial led to further investigation, which resulted in the new money laundering counts); David Johnson, 2001 WL 278093, at *12 (recognizing that although the State knew about the robbery aspect of the homicide two weeks prior to the defendant's first trial, the State, based on prior experience, did not believe the trial court would grant a continuance so additional charges could be submitted to a grand jury).

- 13 -

We are unpersuaded that the prosecutor's "reassessment" of the evidence against Jensen after learning about the new trend of charging banned, repeat shoplifters with burglary is sufficient to overcome the presumption of prosecutorial vindictiveness. <u>See Frank Michael Vukelich</u>, 2001 WL 1044617, at *9 n.2 (noting the difference between new evidence and a "reassessment" of the evidence within the context of prosecutorial vindictiveness). In reaching this decision, we recognize that prosecutorial vindictiveness can take a variety of forms. The State, in its affidavit, candidly admits that it charged Jensen with burglary following the mistrial because it intended use its discretionary charging authority to prosecute <u>all</u> banned, repeat shoplifters with burglary, a practice that is, itself, retaliatory and violative of due process. Because the State failed to present clear and convincing evidence demonstrating that the prosecutor's decision to charge burglary in Jensen's case was motivated by a legitimate purpose, the trial court's dismissal of the burglary charge can be upheld on the basis of prosecutorial vindictiveness as well.

Even if the State is found to have rebutted the presumption of prosecutorial vindictiveness with its affidavit, which we do not believe to be the case, the dismissal of the burglary count can be upheld on independent due process grounds. Historically, the crime of burglary served to protect people in their homes at night. Black's Law Dictionary defines burglary as "[t]he common-law offense of breaking and entering another's dwelling at night with the intent to commit a felony." <u>Black's Law Dictionary</u> (10th ed. 2014). Tennessee's burglary statute, which has not been amended since 1995, provides that a burglary is committed when a person without the effective consent of a property owner acts in one of four ways:

> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
> (3) Enters a building and commits or attempts to commit a felony, theft or assault; or
> (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

T.C.A. § 39-14-402.

A review of legislative history shows that the burglary statute within Tennessee's 1989 Proposed Criminal Code, as well as this statute's commentary, were adopted nearly verbatim from the 1970 version of the Proposed Revision of the Texas Penal Code. <u>See</u> Jonathan Harwell, <u>Burglary at Wal-Mart: Innovative Prosecutions of Banned Shoplifters</u>

Under Tenn. Code Ann. § 39-14-402, 11 Tenn. J. L. & Pol'y 81, 99-103 (2016) (citing Tennessee Sentencing Comm'n, Proposed Revised Criminal Code (1989); State of Tennessee Law Revision Comm'n, Criminal Code:  Tentative Draft ii (1972)).  While the 1967 version of the Proposed Texas Code used the qualifier "not open to the public" when describing the term "building" in both the first and third sections, which correspond to sections (a)(1) and (a)(3) of Tennessee's burglary statute, the 1970 version of the proposed Texas Code, which was substantially copied in Tennessee, did not include the "not open to the public" language in the third section, and the commentary for the 1970 Texas draft failed to explain the absence of this language.  Jonathan Harwell, Burglary at Wal-Mart:  Innovative Prosecutions of Banned Shoplifters Under Tenn. Code Ann. § 39-14-402, 11 Tenn. J. L. & Pol'y 81, 99-103 (2016).  Harwell concluded that   this language was most likely removed to avoid redundancy.  See id. at 89, 110.

We agree with Harwell that other aspects of the legislative history of Tennessee's burglary statute make it reasonable to conclude that (a)(3), for which Jensen was charged, was never intended to cover buildings open to the public, like Wal-Mart:

First, the fact that the purpose of section (a)(3) was an evidentiary one—to make it easier to prove the case when a defendant was caught red-handed— supports a narrow interpretation of section (a)(3).  If section (a)(3) was intended to make it easier to prove cases that otherwise would be brought under section (a)(1), then there is no reason for section (a)(3) to cover a different set of structures (entry into buildings open to the public) than section (a)(1) does.

Second, to the extent that the comments addressed the issue, there seems to be no understanding that section (a)(3) could be interpreted to cover different places than section (a)(1).  On the contrary, the comments assume that it should not be interpreted in such a manner.  As noted above, the introductory commentary, in explaining the reason why there even should be a burglary statute, included the explanation that burglary "protects against intrusion in places where people, because of the special nature of the place, expect to be free from intrusion.  The provision of this protection is the rationale underlying this section."  This hardly evidences any understanding that, because of the way section (a)(3) is phrased, it can be interpreted potentially to cover all buildings and not just habitations and private buildings.  A Wal-Mart can hardly be considered a place with a "special nature" of privacy.  If, as stated, that is the purpose of the burglary statute, interpreting it to cover buildings open to the general public does not further that purpose.

- 15 -

The third important piece of evidence on this issue comes from the language of the comments to the 1989 Proposed Code quoted above (again, language first included in the 1970 Texas draft and then adopted by the Law Review Commission and the Sentencing Commission):

> As in present law, however, one who, with intent to commit a felony or theft, enters a building open to the public or otherwise has consent to enter, such as a servant or brother-in-law, commits no burglary and can be prosecuted only for the commission or attempted commission of the offense intended, unless the offender remains concealed after consent to his or her presence has terminated.

> Read carefully, this passage states that one who enters "a building open to the public" and commits a theft offense "commits no burglary" and can be convicted only of theft. Crucially, it does not say that such a person can be convicted only under section (a)(3); it says, rather, that that person cannot be convicted of burglary at all. This provides strong support for the conclusion that the drafters of this provision did not intend for the statute to be (and, indeed, did not realize that it might be) interpreted to cover buildings that are open to the public.

Id. at 111-113 (footnotes omitted).

The legislative history strongly implies that subsection (a)(3) of Tennessee's burglary statute was never intended to cover buildings open to the public, like Wal-Mart. By charging individuals with burglary, a Class D felony, when they should only be prosecuted for misdemeanor theft or shoplifting, prosecutors are abusing their charging discretion by unilaterally and unreasonably expanding the reach of the burglary statute. While the maximum sentence for a misdemeanor theft[3] or shoplifting conviction is eleven months and twenty-nine days in the local jail, even for a repeat offender,[4] the sentence

---

[3] On January 1, 2017, Tennessee Code Annotated section 39-14-105, which provides the punishment for theft, was amended to state that theft of property or services is a Class A misdemeanor if the value of the property or services obtained is $1000 or less. See T.C.A. 39-14-105 (Supp. 2017). The prior version of the statute stated that this offense was a Class A misdemeanor if the value of the property or services obtained was $500 or less. See T.C.A. § 39-14-105 (Supp. 2012).

[4] We note that an amendment to the shoplifting statute, found in Code section 39-14-146, became effective July 1, 2017. This amendment, which adds subsection (c) to the statute, provides that "[n]otwithstanding any other law, a fifth or subsequent conviction in a two-year period shall be punished one (1) classification higher than provided by § 39-14-105, and subject to a fine of not less than three hundred dollars ($300) nor more than the maximum fine established for the appropriate offense

range for a person convicted of burglary is two to twelve years in prison. <u>See</u> T.C.A. §§ 39-14-103, -105, -146, -402; 40-35-111(b)(4), (e)(1). Our review of the legislative history of the burglary statute shows that charging of burglary in these instances is unreasonable, unjust, and violative of due process. For all of these reasons, we affirm the trial court's dismissal of the burglary charge in this case.

## CONCLUSION

Based on the aforementioned authorities and reasoning, the judgment of the trial court dismissing the burglary count is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

---

classification." <u>See</u> Act of Apr. 19, 2017, 2017 Tenn. Laws Pub. Ch. 184 (H.B. 56 substituted for S.B. 119) (amending shoplifting statute) (effective July 1, 2017) (emphasis added).